JAMES D. FISH and others

*v.*

THE NEW YORK WATER PROOF PAPER COMPANY and others.

1. A trust to sell lands, even on a contingency, confers a fee simple, and, in order to carry out the intention of the parties, the trust deed may be reformed so as to convey a fee.

2. Besides a mortgage on lands, a chattel mortgage, covering the fixtures thereon, was executed at the same time and to secure the same debt, consisting of several bonds.—*Held*, that one bondholder could not, by obtaining a judgment on his bond and levying on such fixtures, acquire a preference over the other bondholders, even if those fixtures were not part of the realty and the chattel mortgage had not been refiled within the time required. (*Rev.* p. 709, § 41.)

3. As between mortgagor and mortgagee, a chattel mortgage is good without refiling.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. G. Ackerson, Jr.,* for complainants.

*Mr. Joseph C. Potts,* for defendants.

THE CHANCELLOR.

The bill is filed to foreclose two mortgages, one upon land and premises with the appurtenances in Bergen county, and the other in the nature of a mortgage of chattels, but upon certain machinery and fixtures in the factory on the premises. Those mortgages are of the same date, July 22d, 1873, and were made by The New York Water Proof Paper Company to the complainants, as trustees for the holders of certain bonds, for $15,000 in the aggregate, besides interest, made by the company to the complainants as trustees. The bill prays that the first-mentioned mort-

gage, which is without words of inheritance, may be reformed so as to pass an estate in fee. The defendants are all, with one exception, bondholders. That defendant is the plaintiff in an attachment in the supreme court of this state against the company, but it is alleged that his claim has been paid. One of the bondholders, Solomon D. McMillan, is made a party defendant in respect, also, to two judgments recovered by him against the company in the supreme court of this state in 1875.

The bonds all became due on the first of August, 1874. Under executions, issued on his judgments, McMillan levied on the following property, which was then in the buildings on the mortgaged premises: A steam-engine of forty horse-power and the boiler; a chemical machine and washing apparatus; a set of thirteen drums; some driers, with the pipes and fixtures thereto; a set of calenders of three metal rolls; a paper trimming and cutting machine; three sets of embossing and enameling rolls, with frames; a force-pump, and a steam-pump with the shafting, pipes, pulleys and belting in the factory. This property is not mentioned in the mortgage first above mentioned, but is described in the other, which is, as already stated, in the nature of a chattel mortgage, and both were made to secure the payment of the bonds. After the filing of the bill, McMillan was restrained by injunction in this suit from selling the property which he had so levied upon.

That the company intended to mortgage the fee of their real property described in the first-mentioned mortgage, is manifest from the proof; and, indeed, it is not denied by McMillan in his answer. He, indeed, denies that there was any understanding or agreement between the company and the complainants that the mortgaged property should be conveyed to the latter in any manner or by any estate different from that on which they were conveyed as set forth in the mortgage; but he does not deny that it was the intention of the company to mortgage the premises in fee, and that it was the expectation of the bondholders that the

2

mortgage would convey such an estate. He says, further, in his answer, that if there was a mistake it was a mistake as to what was the law, and he insists that no relief can be afforded for it in equity. He does not answer the statement of the bill that when the mortgage was executed the directors supposed that it had been so drawn as to mortgage the premises in fee-simple. He was one of the board of directors at that time, and could have answered this statement. He offers no proof on the subject. It appears from the testimony on the part of the complainants that there was no intention on the part of the company to mortgage any less estate than a fee, and that it was supposed by those who were interested in the mortgage that no less estate was mortgaged thereby. The mortgage was drawn and executed in New York. It conveys the premises to the " parties of the second part (the trustees), as trustees, or the survivor of them, and to their successors and successor and assigns, to the only proper use, benefit and behoof of the said parties of the second part, or the survivor of them, or their successors or successor." Part of the trust declared in the mortgage is that in case of such default in payment as is therein mentioned, the trustees, or their survivor, or their or his successor or successors, shall enter upon and take possession of the premises and the appurtenances, and, at the request of the holders of the bonds to the value of $500, sell the premises in the manner provided by law in cases of foreclosure of mortgage upon real estate situated in the state of New Jersey, and from the avails of any such sale first pay and discharge all legal expenses and disbursements by them incurred about the business of the trust by that instrument created, and then apply the residue to the payment *pro rata* of the principal and interest of the bonds, and render the overplus, if any, to the company. This is the declaration of a trust of the property to sell it through foreclosure proceedings to raise the money necessary to pay the costs of executing the trust, and the amounts due to the bondholders. The bonds were issued to the creditors of the

company to secure the payment of its debts to them.   A trust to sell, even on a contingency, confers a fee-simple as indispensable to the execution of the trust.   *Lewin on Trusts*, 250, 251; *Perry on Trusts*, § 315.   The mortgage should be reformed so as to convey a fee-simple by its terms.

It appears that the mortgage upon the machinery and fixtures was filed according to the provisions of the act concerning mortgages in respect to mortgages of chattels.   No copy of it, with a statement exhibiting the interest of the mortgagees in the property therein claimed by them by virtue thereof, was filed in the clerk's office within thirty days next preceding the expiration of one year from the date of the filing of the mortgage, and McMillan insists that, therefore, he, by virtue of his levy, has priority of lien on the machinery and fixtures.   But it is very clear that the machinery and fixtures pass by the mortgage of the land with the appurtenances.   They were all in place in the factory when the mortgage was executed.   They were put into the factory for the very business for which it was built.   The proof is, that the steam-engine is upon a stone foundation, which was built for it; the boiler is bricked in; the chemical machine and washing apparatus are bolted into the beams, and the floor was built to accommodate them.   If taken out there would be no floor where they now are.   They cannot be taken out of the building without destroying them.   If any of the other machinery connected with the chemical machine and washing apparatus were removed it would be of no use for any other purpose.   The drum driers are very heavy machines, set on a heavy stone foundation, sunk to the depth of about four feet below the surface, and about six or seven feet wide, and built to accommodate them.   They will each weigh about a ton, and the whole thirteen, with their supports and frames, will weigh about twenty-three tons.   They are fastened to the foundation on which they are set by heavy bolts running through the foundation, and the bolts were masoned in when the foun-

dation was built. The drums are run by a belt, with shafting connected with the engine, and the shafting is bolted to the ceiling. The calenders and metal rolls are bolted fast to the beams, and are connected with the engine in the same way. The paper trimming and cutting machine is fixed in the same manner as the calenders, and is run in the same way. The embossing and enameling machines are set upon a heavy stone foundation, built in the same way as that in which the driers are set, and fastened in the same manner. The force-pump is bolted to the beams, the floor being supported by beams from below to sustain the pump. The pump has steam connections with the boiler and engine. The steam-pipes run all through the building. They are connected with the boiler, and run along the sides of the building, being fastened to it by staples. The machinery was put into the building as permanent fixtures. The property (except the land) has no value except for manufacturing purposes. The mortgage, in the nature of a mortgage of chattels, was given with a view to securing to the bondholders all the property of the company, and to avoid all questions which might arise as to the character of the machinery and fixtures. As between mortgagor and mortgagee all the property in question should be treated as part of the realty. *Quimby* v. *Manhattan Cloth and Paper Co.*, 9 *C. E. Gr.* 260. Nor is the question at all affected by the fact that the property was mortgaged by a separate mortgage, as though it were chattels. *Ibid.*

But again, it appears by McMillan's answer that his judgments are founded on the bonds held by him, and which are part of those secured by the mortgage. He cannot, in equity, be permitted to obtain an advantage, by means of his judgments, over the other bondholders. He has no equity by reason of his judgments. If the machinery and fixtures are, as between the mortgagor and mortgagees, chattels, the latter have lost their right to have recourse to them for the payment of their mortgage as against the mortgagor,

though no copy of the mortgage was filed within thirty days next preceding the expiration of a year from the filing of the mortgage. McMillan claims a legal lien under the levy on the executions issued upon his judgments, and insists that he is entitled to be regarded as a vigilant creditor who, by his diligence and the negligence of the mortgagees, has acquired a lien superior to that of the latter on part of the mortgaged property. But the mortgagees are trustees for him and his fellow-bondholders to secure debts which include those for which he has recovered his judgments. The claim which he asserts cannot be recognized in equity. To permit him to proceed at law for the collection of his debts by execution against the mortgaged property would disturb the *pro rata* distribution of the proceeds of the sale in case of a deficiency of the fund to satisfy the whole debt which the mortgage was made to secure, and would give him an inequitable preference over his associates. *Pennock* v. *Coe,* 23 *How.* 117. The injunction will be made perpetual.

The mortgage will be reformed by substituting the word "heirs" for the word "successors," and the complainants are entitled to a decree for the amount of principal and interest due on their mortgage, and to a sale of the mortgaged premises to make such amount.